## GUARDIANSHIP OF FRANK B. TAYLOR, A MINOR.

[No. 1,946; decided July 22, 1886.]

**Guardian—Considerations in Appointing.**—In the appointment of guardians of minors the court is to be guided by the considerations specified in section 246 of the Civil Code.

**Guardian—Relatives and Strangers.**—When two persons, one a relative and the other not, apply for guardianship of a person, all other things being equal, the relative should be appointed.

**Guardian.—After the Mother the Next of Kin** of an infant under fourteen years is entitled to be appointed guardian.

**Guardian.—Where a Stranger has been Appointed Guardian** of a minor, the father being deceased and the mother unfit, and thereafter the mother dies having indicated a wish that a relative be appointed guardian, the appointment of the stranger may be revoked and the relative appointed if it appears for the best interests of the child.

**Guardian—Grounds for Removal.**—Section 253 of the Civil Code, which specifies the causes for which a guardian may be removed, must be read in connection with the other provisions of the codes on the subject of guardianship.

**Guardian—Appointment of Stranger, Whether Estops Relative.**—The appointment of a stranger as guardian of a minor does not estop a relative, who had no notice, to petition for a revocation of the stranger's letters and for his own appointment.

**Guardian.—It is the Duty of a Guardian to Supply** the place of a judicious parent. He stands in the place of a parent, and supplies that watchfulness, care and discipline which are essential to the young in the formation of their habits.

On December 8, 1882, Nathaniel Hunter, secretary of the California Society for the Prevention of Cruelty to Children, was appointed guardian of Frank B. Taylor, a minor, whose father was dead at the time and whose mother had been guilty of cruelty and neglect toward him.

Thereafter the mother died, and on February 9, 1886, John Tucker, a cousin of the minor's mother, applied for the revocation of the letters theretofore issued to Hunter, and for his own appointment as guardian. In his petition Tucker alleged that he had no knowledge of Hunter's application until long after his appointment.

J. E. Jarrett and Charles W. Bryant, for the applicant.

James I. Boland, for Nathaniel Hunter, opposed.

COFFEY, J.   John Tucker bases his application for letters of guardianship upon three grounds:

1. He is a relative, and as such is entitled to the letters: Civ. Code, sec. 246, subd. 3, par. 4.

2. He is one who was clearly indicated by the wishes of the minor's deceased mother, as her choice of guardian in case of her death: Civ. Code, sec. 246, subd. 3, par. 2.

3. He is one of the next of kin of minor, and as such has a natural right to the guardianship, at common law: Reeves' Domestic Relations, 315.

The testimony shows that Tucker is competent to act as guardian, and that it is for the best interest of the ward that he be appointed.   He has not surrendered his right, and it has not been taken away from him by the judgment or order of any court.

Counsel opposing Tucker's application has referred to a previous order of this court appointing Nathaniel Hunter guardian.   He has not expressly urged the proposition that a stranger to a record in judicial proceedings can have his future rights taken away from him; nor has he contended that Tucker was estopped by proceedings of which he had no notice.

He has referred to section 253, Civil Code, and asserts that Hunter could not be removed except for the causes therein mentioned.   It is unnecessary to cite authorities that all sections of the code must be read together, and that all must stand if possible.

By the construction contended for, if parents should be absent from the state temporarily and leave their children with friends, and such friends should procure letters of guardianship, the letters could not be revoked on the ground of the superior rights of the parents.   The parents would be bound by a record to which they were not parties, and would be compelled to show the incompetency of the guardian who claimed that their rights were taken away from them "without due process of law."

Tucker's right has not been taken away from him by due or any process of law.   He has not relinquished it, and now for the first time he appears in this court on equal terms with Hunter, and the previous order, as to Tucker, is as if it had not been.

The parents may or may not have been estopped by it, but there is no more estoppel as to Tucker than if the records were blank.

We have searched the books, and we cannot find a single case where counsel have urged the proposition that a person is bound by a record to which he is a stranger, when such record purports to devest him of a right, or where a text-writer or court have ever considered such a question.

The courts in New York, where the law of guardianship is similar to ours, and where a section of their code exists similar to section 253, Civil Code, have uniformly disregarded orders appointing guardians where notice is not given to relatives, if the orders are attacked by the persons not notified and who have a right to the appointment.

Their code is broader in its language than ours as to the discretion of the court in ordering notices to be given; yet it is said that it is a legal and not an arbitrary discretion.

We cannot find an instance where the position urged here was ever presented before the New York courts: Matter of Feeley, 4 Redf. 306; Underhill v. Dennis, 9 Paige, 208; Moorehouse v. Cooke, Hopk. Ch. 258; Rickards' Case, 15 Abb. Pr., N. S., 7.

Testamentary guardians are held by our supreme court to be on the same footing as probate guardians.

In Lord v. Hough, 37 Cal. 657, the mother had notice of the appointment of the testamentary guardian, yet the supreme court did not consider the question here urged, but in substance followed the reasoning of the New York courts and other courts of last resort throughout the United States.

Tucker's right accrued on the death of Mrs. Taylor, and whether Tucker had or had not notice at the time Hunter was appointed is alike immaterial.

In Lord v. Hough, 37 Cal. 657, on the application by the mother for guardianship, the same position was taken by the guardian already appointed as is here taken by Mr. Hunter, but the court decided, in substance, that the mother was entitled to the trust; being competent she could not be devested of this right, and the precedents of a semi-barbarous civilization were scouted by the court, and the position taken by counsel here was declared to be not the law.

It is urged, however, that Tucker was requested by the mother of this child in 1880, and also after the seizure of the minor by Hunter, to assume the guardianship, and that he did not do so. Counsel for Hunter has given a good reason why he did not do so. The father was living at this time.

The request of the mother while the father was living was of no legal effect under section 197, Civil Code, and conferred no rights whatever and imposed no duties upon him, as counsel correctly urged, any more than the request of the father in that respect in relation to Hunter.

The request of the mother at that time in relation to Tucker, and that of the father relative to Hunter, are absolutely void, except as circumstances showing the mother's continued and long entertained desire.

If, morally, any duty was imposed on Tucker during these years, he explained his action consistently with the highest principles of honor and right feeling.

This court had adjudged the parents unfit to care for the child.

If Tucker, as a relative of the deceased mother and also her friend and the friend of its father, had secured letters of guardianship, could he have resisted the longing and importunities of the child's mother to have the care of her offspring?

The responsibility would have been a divided one, and he would have been in a perpetual war between the kindliest feelings of his nature and the orders of this court.

Tucker was of opinion that after her husband's death the mother was conquering her disposition to drink, taught her and forced on her by Taylor, and that the child was better with her; as a gentleman he could not place himself in antagonism with either the court or his better nature. Had he accepted the guardianship and refused the care of the child to its mother, his relative and friend, it would have shown in him a hardness of heart which would have been conclusive evidence of his unfitness for this trust.

Another portion of the testimony might be here referred to: Tucker has testified that he is the owner of income bearing property sufficient for all his needs, and that he is in such a financial position that he does not seek contracts in his line of business other than those in which there is ample remunera-

tion for the exercise of his highest skill. That on his own account he cares nothing for the guardianship, and that he is making the contest solely in compliance with the request of his dying relative—his promise to her, and for the good of the child.

This motive, from the argument of counsel, is not understood by Mr. Hunter. Because Tucker is actuated by purer motives than men frequently are in such matters is no reason why his rights should be disregarded, or that he is the less in earnest concerning them.

Gain is not Mr. Tucker's motive for appearing before this court; the good of the minor is his motive.

Another circumstance appearing in the testimony might be noticed here: It was proved, and there is no contradiction, that Mr. Taylor in his lifetime induced Mrs. Taylor to drink. Mr. Taylor's own sister testified that he was addicted to drink and that it brought about the ruin of his family.

There is another broad proposition underlying the application of Tucker. He is of the blood of the ward, and Hunter is a stranger, and no court has yet decided that a stranger has a better right than the relative. Even if one parent should request the appointment of a stranger it would be disregarded when next of kin equally competent will take the trust.

When two persons, one a relative and the other not, apply for guardianship of a person, all other things being equal, the relative should be appointed: Johnsen v. Kelly, 44 Ga. 485.

Preference shall be given in all cases to the next of kin: Allen v. Peete, 25 Miss. 29.

The American rule is clearly stated to be that after the mother the next of kin of an infant under fourteen years is entitled to be appointed guardian, and that such claim cannot be disregarded unless for some satisfactory reason: Lord v. Hough, 37 Cal. 657-669.

Tucker has a natural right and a right by statute to receive this trust.

When Mr. Taylor, the father, died, the mother succeeded to the sole right of designating a guardian for the minor. Before that time it was a divided right, and it could only have been exercised by a joint request. No such joint desig-

nation was made, but the mother did designate a guardian who was of next of kin and in every respect competent.

No point can be urged about the mother's unfitness to designate a person for guardian, because she has used her statutory right wisely. There is a clear legal right given this mother· to designate, just as much so as is given the surviving husband or wife to designate an administrator. Her designation should not be disregarded unless unwisely exercised, and here the evidence shows the greatest wisdom in her selection.

If her wishes and instructions to Mr. Kelly had been carried out by Mr. Kelly, a will would have been presented for probate making Mr. Tucker a testamentary guardian and executor of her estate. Could this court have refused the probate of the will and have then refused letters to Mr. Tucker? If not, then can this court refuse letters to Mr. Tucker upon her designation?

Mr. Hunter has testified that he has never collected pay for the maintenance of this ward, although the mother had ample means in this city to pay for the child. His duties are such, by reason of the position he holds, that he could not easily have done so, and no one expected him to do so.

It is the duty of a guardian to supply the place of a judicious parent. He stands in the place of a parent, and supplies that watchfulness, care and discipline which are essential to the young in the formation of their habits, and of which, being deprived altogether, they would better die than live: Schouler's Domestic Relations. Any stranger in blood who would perform these duties would be entitled to the letters against Mr. Hunter. This is not to his disparagement, but rather to his credit, for he does not intend to give up the onerous duties imposed upon him by the useful society of which he is secretary.

Mr. Tucker has no direct heirs. He is a man of means and leisure. He is a master of useful callings, and well informed. The minor would receive from him the benefit of his experience, and in the course of nature, if his ward, would be likely to receive more property from his guardian than the amount of his present estate. There is no such prospect with Mr. Hunter as guardian.

The desire of this mother that Mr. Tucker, friend of the family, and her relative, should be the guardian of her child and administrator of her estate was evidently uppermost in her mind continuously, for one of Mr. Hunter's witnesses, Mrs. Silver, the woman who lived at Mrs. Taylor's, and who unconsciously reflects Mrs. Taylor's oft-expressed wishes, is sufficient to impress the court with Mrs. Taylor's desire that Mr. Tucker should be appointed.

One of Mrs. Taylor's last acts was to solemnly petition the court to remove Mr. Hunter. To disregard this wish of the mother and deny the application of Mr. Tucker would imperil the future prospects of this minor, in the opinion of this court.

Mr. Hunter by law is not entitled to the guardianship as against Mr. Tucker. He is legally disqualified, and it is not for the best interest of the ward that he should continue in his office.

Mr. Tucker is by law entitled to the letters; he is legally qualified and it is for the best interests of the ward that he should be appointed, and the prayer of his petition is granted.

---

The Considerations Governing the Court in Selecting a Guardian for a Minor are considered at length in Estate of Smith, 1 Cof. Pro. Dec. 169; Estate of Hansen, 1 Cof. Pro. Dec. 182. By reference to these authorities it will be found that while the rights of relatives to the custody of a child will not lightly be disregarded, nevertheless the welfare of the child is the controlling consideration, and a stranger may be preferred even to the mother if she is unfit for the trust. The court must regard the wishes of the deceased mother, expressed in her lifetime, if not inconsistent with the welfare of the child: Guardianship of McGarrity, 1 Cof. Pro. Dec. 200.